# Lake Shore & Michigan Southern Railway Co. *versus* Rosenzweig.

1. A passenger's railway ticket is evidence of the payment of his fare and his right to be carried according to its terms. It does not express the whole contract. What it does not set forth may be ascertained from the reasonable rules and regulations of the railway company. He is bound to inform himself of such regulations respecting the conduct of trains and the rights of passengers.

2. The law does not presume that one about to become a passenger or one who has become a passenger on a railway knows the rules and regulations of the railway company.

3. One who neglects to inform himself, as to the rules and regulations of a railway company, has no greater right under his ticket than if he had acquired actual knowledge of the terms of his contract.

4. A passenger's right to recover damages for injuries received, through the negligence of the conductor of a railway train, in putting him off the train at a dangerous and improper place, does not depend upon his right, under his contract with the company, to ride upon that train, but upon the fact that his injuries were the natural and probable consequence of the negligent act of the conductor.

5. A passenger who has an open way to an open car going to the place to which he bought and holds a ticket, and enters the car without knowledge that his ticket is not good on that car, is not a trespasser.

6. A railway company owes a duty to every passenger who in good faith purchases a ticket and enters any of its conveyances. If the conveyance is one which by the contract the passenger has no right to take, its duty is, to inform him and put him off at a proper place.

7. The general rule in cases for negligence is, that only compensatory

[Lake Shore & Mich. Southern R'y Co. *v.* Rosenzweig.]

damages can be given; but exemplary damages may be given where the injury complained of was caused by the defendant's wilful misconduct, or that entire want of care which would raise a presumption of conscious indifference to consequences.

8. A corporation is liable for exemplary damages for the act of its servant, done within the scope of his authority, under circumstances which would give such right to the plaintiff as against the servant, were the suit against him instead of the company.

9. Statements made to his physician by one who has sustained injuries through the negligence of another, as to the severity of his injuries, his pains and sensations, are competent evidence in an action to recover damages therefor.

10. Lichtenwallner *v.* Laubach, 9 Out., 366 followed.

April 30th, 1886.  Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.  MERCUR, C. J., and PAXSON J., absent.

ERROR to the Court of Common Pleas of *Erie county:* Of January Term 1886, No. 74.

This was an action on the case, brought by Louis Rosenzweig against The Lake Shore & Michigan Southern Railway Company, to recover damages for injuries sustained through the alleged negligence of the conductor of the defendant, in putting him off a passenger car in which he was a passenger, in a dangerous and improper place.  Plea not guilty.

On the trial before GALBRAITH, P. J., the following facts appeared: The plaintiff, Louis Rosenzweig, at the time of the injury complained of was an attorney at law, thirty-eight years of age, residing in the city of Erie.

On the 25th day of November, 1883, he had occasion to visit the city of Cleveland, a distance of ninety miles west from the city of Erie.

He purchased a ticket at the defendant's ticket office in Erie for a passage to Cleveland and return, commonly known and designated as a round-trip ticket, as follows, to wit:

" The Lake Shore & Michigan Southern Railway."
        " Erie to Cleveland and Return."
    " Good only for thirty days from date of sale,"
    " And for one continuous passage each way."
9914                        " J. W. Carey,"
                        " General Ticket Agent."
Stamped on the back,
        " Union Depot, November 25th, 1883."

This kind of ticket had been in use for many years, and by the rules and regulations of the company was a first class ticket, and the holder of such a ticket was entitled to a first-class

passage on any and all the passenger express trains (at least until change made in May 14th, 1883). The ticket entitled the holder to all the rights and privileges he would have under a single-trip ticket each way, and being more convenient, and costing a trifle less, the public became accustomed to buy them instead of single-trip tickets. In March or April of 1883, the plaintiff rode from Cleveland to Erie on "Limited Express Train No. 20," or "The Fast New York Express," (being called by each of said names in different time tables,) on a round-trip ticket, being then good on that train, as understood by the officers and agents of the company.

On May 1st, 1883, the officers of the railway company made a change in the rules, which rendered these round-trip tickets not good on one of the company's express trains going west, "Limited Express Train, No. 17," and one going east, "Limited Express Train, No. 20," but no notice of this change was given to the public except by the time tables and posters.

The plaintiff testified that he had no actual notice either from time tables, posters, or otherwise, and that he had no knowledge of any rule which rendered his round-trip ticket not good on the train from which he was ejected.

The plaintiff arrived in Cleveland at about 6 P. M. on the Special Chicago Express, and at about 10 P. M. of the same day he went to the Cleveland depot, expecting to return home by train leaving at about that time, called Special New York Express, but he was informed by the ticket agent that said train did not run on Sunday. Then, upon inquiry, the ticket agent informed him, Rosenzweig, that the next train for Erie would leave at 1.22 or 1.42, and further remarked to him, " you will have a long wait," but said nothing about the number or character of the train leaving at that hour. The plaintiff waited in and about the depot until the train came in from the west. The train was made up of three sleepers, a day coach and baggage car. Several persons got off the train at this point, and one other person besides the plaintiff took passage on the train at this point.

When the plaintiff went to the train to get on board, a person standing by the day coach, dressed in the garb of a railway employé, assisting passengers to alight, asked him as to what station he was going, and when informed by him that Erie was his destination, he directed him to take the day coach. The plaintiff then, as directed, stepped into the day coach and took a seat, and being weary soon fell asleep. The train remained in the Cleveland depot about ten minutes.

On being awakened by the call of " Tickets," the plaintiff handed his ticket to the conductor, who, seeing it, reached for the bell cord to stop the train, and as he took the ticket and

handed it back, said: "I have orders to put you off; your ticket is not good." The plaintiff replied: "Conductor, you are mistaken; that ticket was purchased yesterday, and was punched, and I rode on it to Cleveland, and the time is not up." The conductor again said: "My orders are to put you off." The plaintiff then said: "Conductor, if there is anything wrong with my ticket here is your fare," (handing him the money). The conductor again said: "My orders are to put you off, and off you must go. Come!" The plaintiff then said: "For God's sake don't put me off here; carry me to a station," and the conductor again said: "My orders are to put you off, and off you must get. I obey orders, if I break owners."

Under these orders of the conductor, the plaintiff was compelled to leave the car and train. When off the train on the ground, the conductor pointed to a light, saying to the plaintiff: "That will take you to the depot," which light the plaintiff soon discovered was from a locomotive coming towards him, and soon passed him. The point where he was ejected from the train is from a little less than a half mile, to a mile and a half, east from the Cleveland depot. (The witnesses differing as to this point.) When the train left him he found himself in the dark and in the midst of many railway tracks, switches, cars, moving trains, locomotives, etc., and a place totally strange and unknown to the plaintiff. From the Cleveland depot, a system of railway yards and switches extend east for a distance of about three miles. On the north side of these tracks for a long distance, and close up to them, is the lake. Immediately on the south side of these tracks, extending from the depot east for one half mile, is a stone wall about seven feet high, surmounted by an iron picket fence, and above this, extending to Summit street, is a high bluff, terraced say about forty-five feet above the tracks. This stone wall extends 900 feet, three to five feet high, east of the over-head bridge. Part of the north track of this system of tracks, and west of the overhead bridge, had been washed out by the action of the waters of the lake. About 200 feet west of the bridge was a ditch running across the tracks about eighteen to twenty-two inches deep, partly uncovered. The south end of this over-head bridge rests on the high bluff, and from this end a path leads still higher up towards the city. The north end of this foot-bridge rests on a high stone wall, and a winding narrow stairway leads down to a small bath-house which is built out over the waters of the lake.

The whole space and distance from the Cleveland depot east, for three miles along this system of tracks, is a very dangerous and unsafe place even in the day time, and the railway company had posters and placards in large type put up at

various places along and about these tracks, giving warning to the people to keep off and away from these tracks, on account of the great danger to life and limb.

To escape the dangers and peril in which he found himself placed, he at once started in the direction pointed out to him by the conductor, when he noticed that the light to which his attention was directed by the conductor was a locomotive light, coming towards him, and which soon passed him. He then tried to go southward across the tracks towards the city, but was prevented by a freight train just moving towards the west. He then moved east in order to get around this train, but found another train back of it. He then tried to go north, as the safer course to pursue to get away from the tracks and moving trains and engines. In passing across these tracks northward, he saw other cars and engines moving. Noticed some cars moving in a northwesterly direction, and a locomotive then passed him, making it light about him for a moment and then seemingly darker than before. About this time he was hurt by being struck in the rear by some car or moving obstacle, or was tripped, or fell over some obstacle that raised him and threw him up, and he fell. The blow or trip and fall, rendered him for some time unconscious. When he became conscious, his head was down and his arms and limbs drawn up under him. His hat was driven down over his eyes. In attempting to rise he fell over on his side. He then dragged himself across the tracks to a path or ditch; saw a light, heard voices, and called for help. Some railroad men, with lanterns in their hands, came to him, lifted him up, walked with and assisted him some distance toward the depot; they placed him on a railroad tie or plank where he remained some little time, and then dragged himself as best he could toward the depot. When near the depot, a man with a lantern in his hand, came with a baggage truck, on which he placed him and carried him to and through the depot to a carriage, in which he was placed and taken to a hotel. The left leg of his pants was torn at the knee, and a long slit or hole was torn or cut where the rim and crown of the hat join. A physician, Dr. Charles C. Arms (professor of anatomy in the Medical University of Cleveland), was called, who attended the patient professionally for about two weeks, while he remained in the city of Cleveland. He found the pulse weak, feeble and tremulous, and the patient suffering much pain, principally in his back, but also in his head and extremities. Morphia was prescribed, and the next day he gave him a more critical examination, and found an injury on the back of the right shoulder; an abrasion on the right knee, the left knee exceedingly tender and swollen, and the left side

of the back, low down in the lumbar region, swollen and tender.

The injury seemed to be mostly in his back, especially on the left side. He could not lie on his left side. He also had prickling sensation in his feet, and had a falling or sinking sensation, and when awaked from a doze or sleep by any noise, he would spring up partially in his bed and cry out the word, "Jump!" He was exceedingly nervous and could not sleep. He kept his bed until December 6th, when he was removed to his home in Erie, and from that time he was treated by his family physician, Dr. C. Brandes. After some months treatment without recovery, he was advised by his family physician to undergo the severe treatment of the actual cautery, or burning with a white hot iron. After a careful examination of the patient by Drs. C. C. Arms, W. J. Scott and H. Z. Gill, of the city of Cleveland, and full consultation, the same course of treatment was advised by them. The cautery was then performed by applying a white hot iron at some fifteen or more different places along his spinal column. This treatment was applied three different times, but gave no relief save in one particular. Before the cautery was performed his limb had a tendency to draw up. The muscles seemed to be drawn or "knotted," and drew up the limb. The application of the cautery gave him relief in this particular, but in no other. The paralytic condition of the limb continued, and there was no improvement in the shattered condition of his general nervous system. An epileptic condition developed; occasionally he would become dizzy, tremulous, and fall in an unconscious state.

The plaintiff presented the following points for charge:

1. If the jury find from the evidence that the plaintiff purchased a first-class ticket entitling him to ride from Erie to Cleveland and return, that he had no notice from the defendant that his ticket so purchased did not entitle him to ride on train No. 20, that the servants of the defendant, in violation of the rule of defendant omitted to lock the doors of the car when in Cleveland, or to notify the plaintiff that he had no right to take a seat in said car; that they permitted him to take a seat in said car; that the servants of defendant ejected plaintiff from said car after the train had left the depot, when it was passing through the yard of defendant's railway; that said yard was considered by defendant to be a dangerous place; that plaintiff when endeavoring with care to walk through said yard back to the depot was hurt by a car, or by falling into or over some obstruction, then, and in that case, your verdict should be for the plaintiff.

Answer of the Court: This cannot be affirmed as an en-

tirety; the plaintiff was not entitled to notice that the ticket he held did not allow him to ride on the train in question, but if he had been previously carried on the train on the same kind of a ticket and in good faith, without notice or knowledge on his part, that he had no right to a passage on the particular train mentioned; and with permission and acquiescence of the employés of defendant, the plaintiff took a seat in a car of said train, and the employés of the defendant corporation afterwards ejected him at a dangerous place; and the plaintiff, while using ordinary care and caution in endeavoring to make his way through the yard back to the depot received injuries such as should have been foreseen by the conductor of the train, as the natural or probable consequence of leaving the plaintiff in such a place in the night time, the plaintiff is entitled to recover. (First assignment of error.)

2. That if the jury find from the evidence, that the servants of the defendant ejected the plaintiff from their cars, not at a regular station, nor at a dwelling house, as required by the rules of the company, but at a place known to the defendant to be dangerous and unsafe, then, and in that case, if they find for the plaintiff, their verdict should be punitive damages.

Answer of the Court: This is affirmed, with the single qualification that while the jury may, under such circumstances, find punitive or exemplary damages in favor of plaintiff, they are at liberty to find compensatory damages only, if they see proper. (Second assignment of error.)

The defendant presented, *inter alia*, the following points·

1. That plaintiff was bound to ascertain and know the rules and regulations prescribed by the defendant company under which passengers could ride upon that train, and that the law presumes he did know them.

Answer of the Court: The first part of this point is affirmed; but the last is refused. It is true that the plaintiff was bound to ascertain the rules of the company as to the train on which he took passage, but there is no legal presumption that he did so ascertain them. (Third assignment of error.)

3. The plaintiff in this action admits and testifies that he did not know, and made no effort to ascertain, whether under the rules of the company his ticket entitled him to ride on the train from which he was ejected; if, therefore, the jury shall find from the evidence in this case that, under the established rules of defendant company, the ticket that the plaintiff had purchased did not entitle him to ride on that particular train, then the Court is requested to charge, as a matter of law, that no special contract being averred or proved, the plaintiff became and was a trespasser on that particular train, and

defendant had a perfect legal right to eject him therefrom, using no more force than was necessary for that purpose.

Answer of the Court: This is for the jury. Instructions should be asked for on a hypothetical case, and not by requiring the Court to affirm or negative alleged facts as having been proven. The legal proposition included in this point is covered by the answer to the next point. (Fourth assignment of error.)

4. If the jury shall find from the evidence in this case and within the law as it shall be given them by the Court that, under established rules of defendant company, the plaintiff had no legal right to be on the particular train of defendant company from which he was ejected, and was a trespasser thereon, then the Court is requested to charge you as a matter of law that defendant company was "not required to put him off at one place rather than another. While the law will not permit a person to be exposed wantonly to peril, there is no rule which requires any consideration to be shown for the mere convenience of the wrong-doer or trespasser; and if the jury shall find from the evidence in this case that plaintiff was a wrong-doer and trespasser on said train, then plaintiff cannot recover in this action without averring and proving that the act was wilful and wanton, which he has not done."

Answer of the Court: This is refused. It is for the jury to find from the evidence whether the plaintiff was a mere trespasser, wantonly and knowingly intruding on the train, aware of his having no right to be there; or whether he was there innocently and ignorantly, in good faith, and through the negligence of the servants of the company (defendant) in omitting to obey the rule which required them to take precaution against persons without proper tickets getting upon said train. The mere fact that the ticket held by plaintiff did not entitle him to be carried on that particular train, under the rules and regulations of the company (defendant), would not, as assumed in this point, entitle the defendant's servants to treat him as a wrong-doer, or relieve the company from treating him with care and humanity. (Fifth assignment of error.)

5. Plaintiff's right to recover in this action must be measured by the averments contained in his declaration; plaintiff has, in legal effect, alleged a right to recover, based upon a contract which entitled him to a ride from Cleveland to Erie on the particular train from which he was ejected. The burden of proof is upon the plaintiff to show this. The Court is requested to charge as a matter of law that plaintiff has wholly failed to prove such a contract, and therefore cannot recover in this action.

Answer of the Court: This is refused. The right of the

plaintiff to recover in this action does not depend entirely upon his showing a right to ride upon the train in question. (Sixth assignment of error.)

7. That if the jury find from the evidence in this case that under the rules of the defendant company the conductor could not receive a round trip ticket, nor money from the plaintiff for a ride from Cleveland to Erie upon said train, the conductor had a legal right to put him off the train when he saw fit, and unless in doing so he used more force than was necessary, and that plaintiff was injured by the use of such unnecessary force, he cannot recover.

Answer of the Court: This is refused. The conductor had no right to put the plaintiff off the train except at a proper and safe place, and it is for the jury to say from the evidence whether the place where plaintiff was ejected was a proper and safe place or otherwise. (Seventh assignment of error.)

8. That under the evidence in this case the plaintiff was unlawfully upon the train, and therefore a trespasser, and the conductor had a perfect legal right to expel him from the train at any time he saw fit, and the defendant is not liable for any injuries that he received as the result of such legal expulsion; therefore the jury cannot consider the question of whether the plaintiff was in fact injured on his way back to the depot from the place where he was so put off said train, or the question in what manner such injury occurred, if it did occur.

Answer of the Court: "This is refused. (Eighth assignment of error.)

14. If the jury believe from the evidence in this case that at Erie street bridge there were two safe ways by which plaintiff could have travelled south to the city—one by the platform and stairway, on the south side of defendant's tracks, and another by the well-defined pathway on the north side of the defendant's tracks, then it will not do for plaintiff to say that he did not know of them, for the law made it his duty to look around and know for himself that there were such places of safe travel, and if he neglected this obvious duty and pursued his way down the tracks and yard of the defendant company, in consequence of which an injury resulted, then he was guilty of negligence contributing to the injury, and he cannot recover in this action.

Answer of the Court: This is affirmed with the qualification that the jury should examine the evidence carefully, plaintiff being a stranger at the place, and his evidence being that the conductor pointed towards the depot as a place of safety towards which he should make his way by the tracks. (Ninth assignment of error.)

16. The plaintiff has testified in this action that, after being ejected from the train, he walked down the tracks and towards the depot without looking for a safe way of travel by way of the platform and stairway leading to the bridge at Erie street; his admitted neglect in this regard was a violation of the duty that the law imposed, and was contributory negligence, and the plaintiff cannot recover.

Answer of the Court: I decline to affirm the matter of fact claimed in this point. It was the duty of the plaintiff to make every effort to secure his own safety, and if by his neglect to do so he sustained injury, he cannot recover. It is not for the Court to affirm alleged points of evidence; that is for the jury. The proper way is to put a hypothetical case. (Tenth assignment of error.)

18. If the plaintiff himself cannot tell how he received his alleged injuries, whether by a blow from a moving car or engine, or by a fall over some obstacle in his path, the jury cannot guess, speculate or infer how his alleged injuries were received, nor that they were the natural and probable consequence of the act of the conductor; such a consequence as, under the surrounding circumstances of the case might and ought to have been foreseen by the conductor as likely to occur, and the verdict should be for the defendant.

Answer of the Court: While it is true that the jury cannot guess, speculate or infer as to how the plaintiff's injuries were received, yet if they believe from the evidence that such injuries were received by the plaintiff as the direct consequence of his expulsion from the train, and were such injuries as might have been foreseen by the conductor as the natural or probable consequence of leaving the plaintiff in such a place, and that the inability of the plaintiff to testify as to the manner in which he was hurt, results from his having been rendered insensible at the time from such injuries, the fact that he is unable to give an account of the manner of his being so hurt should not, of itself, have the effect of defeating his claim. The point is therefore refused. (Eleventh assignment of error.)

19. The plaintiff having testified in answer to the following question, to wit: " *Q.* Now in your direct examination, as I understand you, you didn't know how you were hurt? *A.* I have so stated, that I didn't know the exact cause. It was a blow from the rear, or I was struck from the rear, whether it was by a car or locomotive, or whether by the projection or whether from the shove I got, or whether a trip and a fall, and falling and doing it, I don't know whether it was from the rear, I don't know what did it. *Q.* You don't know whether you was hit by an engine or car, or whether you were sandbagged? *A.* No, sir. *Q.* Then it is altogether probable that the blow

was the cause of the fall? *A.* It may have been. I haven't any means of knowing. *Q.* What is your best impression? *A.* I couldn't say; I don't know. *Q.* You haven't any impressions about it? *A.* No, sir."

And the foregoing being the uncontradicted evidence of the plaintiff himself, the Court is requested to charge the jury that there is no evidence that the expulsion from the cars was the direct cause of the injury, and that therefore the plaintiff cannot recover for any injuries sustained after he was put off the cars.

Answer of the Court: This is refused for the reason just stated in answer to the eighteenth point of defendant, and for the further reason that it is not proper to require the Court to read to the jury particular portions of the evidence in a case, and thus to give it undue prominence, besides affirming its correctness. The proper method is to put a hypothetical case. (Twelfth assignment of error.)

20. It being an undisputed fact that the plaintiff did not receive the injuries complained of in the act of his ejection from the car, but afterwards, he must satisfy the jury by the evidence, how he received his alleged injuries, and unless he has done so he cannot recover.

Answer of the Court: This is affirmed, but not in the narrow sense of requiring the plaintiff to show the exact manner of his being hurt, if he is unable to do so. It is sufficient if the jury find from the evidence that the injuries were such as resulted, and might have been foreseen, as the natural or probable consequence of ejecting the plaintiff at night at the place where he was put off. (Thirteenth assignment of error.)

21. That under all the evidence in this case the plaintiff cannot recover, and the verdict must be for the defendant."

Answer of the Court: This is refused. The case is for the jury under all the evidence. (Fourteenth assignment of error.)

In the general charge the Court instructed the jury, *inter alia*, as follows:

The plaintiff further claims that the place where he was put off was a dangerous and improper place for putting off a passenger, and that his ejection was a wrongful, wanton and inhuman act on part of the conductor, and wholly unjustified by the circumstances. (Fifteenth assignment of error.)

*	*	*	*	*	*	*

If the plaintiff, knowing that he was not entitled to ride on No. 20, and in wilful violation of the rules of the company entered the train, then he would, I take it, be entitled to less consideration than he otherwise could claim, he would be a mere trespasser, the law would not hold the company or its officers to so careful a line of conduct as in the case of a merely

negligent but well meaning person who had ignorantly or carelessly entered the wrong train. (Twentieth assignment of error.)

※     ※     ※     ※     ※     ※     ※

But if he had been carried before on this train on the same kind of ticket, and having no knowledge or notice that his round trip ticket was not good, he entered the car, without any objection being made by the employés of the company, whose duty it was to see that the door of the car was kept locked, and that persons not having the proper ticket were not allowed to enter, he could not afterwards be treated as a wrong-doer and mere trespasser, and summarily ejected at such place as suited the caprice or temper of the conductor, and in violation of the rule of the company, which requires that passengers should not be put off except at a station or near a dwelling house, and such ejection would be wrongful. (Twenty-first assignment of error.)

※     ※     ※     ※     ※     ※     ※

It was the duty of the conductor to use discrimination, and not to treat as a mere trespasser and tramp and wrong-doer, a passenger who was merely guilty, at most, of an error of judgment, or neglect to make the inquiries he ought legally to have made. (Twenty-second assignment of error.)

During the trial the plaintiff asked of one of the physicians who attended him the following question:

*Q.* What, if anything, during the time you were treating him, was said by him in relation to his feet?

*A.* He complained of coldness in his feet.

Objected to—that the statements of the plaintiff to his physician are not competent unless against his interest, and also objects to this testimony of what the plaintiff said to him; that the doctor is called as a medical expert, and that he is not to state the statements of the witness.

THE COURT: The exclamations of pain and the statements of the patient to his physician, as to his sufferings and the locality from which the suffering came, is competent evidence, and the objection is overruled. (Twenty-fourth assignment of error.)

Verdict for the plaintiff in the sum of $48,750 and judgment thereon, whereupon the defendant took this writ, assigning for error, *inter alia,* the answer of the Court to plaintiff's points and to the defendant's points, the admission of the above evidence, and those portions of the general charge above set out.

*John P. Vincent* and *C. D. Roys* (*Rasselas Brown* and *S. M. Brainard* with them), for plaintiff in error.—We maintain as matter of law and believe it to be settled in Pennsylvania as

[Lake Shore & Mich. Southern R'y Co. *v.* Rosenzweig.]

well as in other states, that a railroad company has a right to make and enforce all needful and reasonable rules and regulations for the management and operation of its road and trains. And that it is the duty of persons doing business with the company to inform themselves of the rules and regulations, and to conform to them. We cite the following cases: Dietrich *v.* Penn. R. R. Co., 21 P. F. S., 432; C. C. & A. R. Ry. Co. *v.* Clark, 22 Id., 231; Central Railroad Co *v.* Green, 5 Norris, 421; Crawford *v.* C. H. & D. R. R. Co., 26 Ohio State Rep., 580; Illinois Central R. R. Co. and N. W. Cole *v.* Whittemore, 43 Illinois Rep., 421.

In case of purchasing a ticket it is the duty of a person to know on what train it can be used; the ticket is but a part of the contract for passage, the rules and regulations being the other part: Dietrich *v.* Penn. R. R. Co., 21 P. F. S., 432; C. C. & A. R. Ry. Co. *v.* Clark, 22 P. F. S., 231; Crawford *v.* C. H. & D. R. R. Co., 26 Ohio State Rep, 580; Illinois Central R. R. Co. & N. W. Cole *v.* Whittemore, 43 Illinois, 421.

This is the generally received doctrine with the qualification, however, that their rules and regulations must be reasonable and not contrary to the terms expressed: See Johnson *v.* the Concord Railroad Co., 46 N. H. Rep., 213, and cases there cited; The State *v.* Overton, 4 Nebraska, 435; The C. Col. & Cin. Railroad Co. *v.* S. H. Bertram, 11 Ohio St. Rep., 457; Cheney *v.* the Boston & Maine Railroad Co., 11 Met., 121.

With the same qualification of reasonableness, it is also well settled that one who buys a ticket is bound to inform himself of the rules and regulations of the company governing the transit and conduct of its trains.

Thus he must ascertain the train in which he is to go, the time of its departure and arrival, its stopping stations, his right to get off and get on to resume his trips, &c.

Having established by authorities that the company has a legal right to make and publish the rules and regulations governing the operation of limited express train No. 20; that they were reasonable rules and regulations; that the company had a right to enforce them; that it was the legal duty of Mr. Rosenzweig to inform himself of the rules and regulations applicable to limited express train, No. 20, and to know the use he could make of his round-trip ticket and whether it was good on limited express train No. 20; that it was not incumbent on the company to bring home to the plaintiff a knowledge of its rules and regulations; that it was the legal duty of the plaintiff to comply with rules of the company governing the use of his ticket, it must follow as a legal and logical sequence, that it was the duty of the Court to have affirmed the whole of the defendant's first point.

[Lake Shore & Mich. Southern R'y Co. *v.* Posenzweig.]

There was no contract relation between the parties for passage on train No. 20. The declaration in the case declares on the contract of the defendant to carry the plaintiff. This was the issue. Under the pleadings there could be no recovery: Frederick *v.* M. H. & O. R'y Co., 37 Mich., 342; Hunter & Springer *v.* McHose, 100 Pa., St. 38; M. H. & O. R'y Co. *v.* Marcott, 41 Mich., 433; F. & P. M. R'y Co. *v.* Stark, 38 Mich., 714; C. & A. R'y Co. *v.* Robinson, 106 Ill., 142; E. St. Louis P. & P. Co. *v.* Hightower, 92 Ill., 140.

It was error to instruct the jury that they ought to find punitive damages. The declaration states the ground of complaint as follows: "And the said plaintiff being thus ejected and expelled by the defendant against his will and protest from the defendant's car and train, and negligently and carelessly and unlawfully placed and left in a dangerous and unsafe place," &c. "Unlawfully" states only a conclusion of law, and is mere surplusage: C. & V. R. R. *v.* Dodge, 71 Ill., 253; Kilgour *v.* Furgeson, 77 Ill., 213; People *v.* Village Crotty, 93 Ill., 180.

The terms employed in the declaration to describe the tort complained of are: "negligently and carelessly." This is an averment of mere want of ordinary care, and by no means involves a wanton and wilful act, without which punitive damages cannot be awarded.

If plaintiff wants punitive damages he should have charged the defendant with a wanton and wilful act. The general rule that plaintiff must be confined to the particular negligence charged, is sufficient on this point, but the Kentucky court has judicially passed upon this identical question: Jacobs *v.* Louisville & N. R. R. Co., 10 Bush (Ky.), 263.

In this case the court held: that an allegation in a petition that a railway company "carelessly, negligently, wrongfully and unlawfully ' ran its car over and killed the plaintiff's intestate, does not amount to an allegation that the carelessness and negligence were wilful, and the recovery must be confined to compensatory damages only: Robinson *v.* Stokely, 31 Watts, 270; Stanfield *v.* Phillips, 78 Pa. St., 73; Johnson *v.* C. R. I. & P. R'y. Co., 51 Ia., 25.

Unless the injury has been wantonly inflicted, exemplary damages cannot be given, and the jury must be confined to damages strictly compensatory: Pa. R. R. Co. *v.* Books, 57 Pa. St., 339; Pa. Ry. Co. *v.* Kelley, 31 Pa. St., 372; B. & C. R. R. Co. *v.* Schwindling, 101 Pa. St., 258; Buller *v.* Smith, 57 Ill., 252; P. P. Car Co. *v.* Reed, 75 Ill., 125; T. W. & W. Ry. Co. *v.* Beggs, 85 Ill., 80.

The plaintiff was guilty of contributory negligence in not leaving the tracks by an overhead street bridge in plain sight. The only excuse he gives for not doing so is that he did not

see it.   It was his duty to look; if he had, he could not have escaped from seeing it.

The expulsion of the plaintiff from train No. 20 was not the proximate, but the remote cause of the injury, and the Court should have so instructed the jury.

The law of Pennsylvania is established by a long line of adjudicated cases, that the act complained of must be the proximate, and not the remote cause of the injury to entitle the injured party to recover, and this rule is sustained by the decisions of many other states.   We cite the following cases on this question: Morrison v. Davis & Co., 8 Harris, 171; Pennsylvania R. R. Co. v. Kerr, 12 P. F. Smith, 353; O. C. & A. R. R. R. Co. v. Keighron, 24 P. F. Smith, 316; Fairbanks v. Kerr, 20 Smith, 90; McGrew v. Stone, 3 Smith, 436; Hoag and Alger v. L. S. & M. S. R. R. Co., 4 Norris, 293; Ryan v. N. Y. C. R. R. Co., 35 N. Y. Report, 210; Railway Co. v. Valleley, 32 Ohio, 345.

One of the most valuable *criteria* furnished us by the authorities is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause.   If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief, the other must be considered too remote: Ins. Co. v. Tweed, 7 Wall, 44.

*J. Ross Thompson*, (*Geo. A. Allen* and *D. C. Davenport* with him), for defendant in error.—The plaintiff had a first-class ticket, presumably good on all trains; had a right to so construe it from its face; is permitted to enter the train; no one to notify him to the contrary, but as shown by the evidence, was directed by a servant of the railroad, wearing a cap, or badge, inquiring where he was going; replying Erie, was directed to take this car.   This, too, coupled with the fact that plaintiff, making inquiries of ticket agent at Cleveland, on learning the train he was to take did not run on Sunday night, when he could get the next train for Erie, was told by the agent that the next train for Erie would leave about 1.30 A. M.; nothing said to plaintiff about the train being limited or the kind of ticket required; would the plaintiff thus become a trespasser?   Pa. R. R. Co. v. Specker, 9 Out., 142; Railway v. Greenwood, 79 Pa. St., 373.

What the *narr* has to do with the answer of the Court to our first point, we are unable to see.

The declaration has two counts, separate and distinct; as printed in plaintiff's in error paper book, it would look like one.   The first count based on the right to be carried on his ticket; the second on plaintiff being received on defendant's cars, and says he was struck, pushed, knocked down, thrown,

[Lake Shore & Mich. Southern R'y Co. *v.* Rosenzweig.]

and fell upon the track and rails, by moving cars, engines, locomotives, with great force and violence, and was then and there tripped, thrown, and fell, by rails, and other implements, and railway tools, and machinery, with great force and violence.

Corporations, like natural persons, are liable in exemplary damages, when the facts of the case are of a character to warrant them: Mallick *v.* Tower Grove Railway, 57 Mo., 17.

The rule almost universally now held, is that the master is liable for the wilful and even malicious acts of his servants in the line of his duty, and exemplary damages may be given against the corporation for injuries inflicted by its servants, wilfully or maliciously, and whether authorized or ratified by it or not: Goddard *v.* Grand Trunk Railroad Co., 59 Me., 202; Hopkins *v.* Atlantic etc. Railroad Co., 36 N. H., 9; Pittsburgh, etc., Railroad Co. *v.* Slusser, 19 Ohio S. R., 257; Philadelphia, etc. Railroad Co. *v.* Larkin, 47 Md., 155; Milwaukee Railroad Co., etc. *v.* Arms, 91 U. S., 489; Chicago, etc., Railroad Co. *v.* Bryan, 90 Ill., 126; Pittsburgh etc. Railway Co. *v.* Donahue, 70 Penna., R. P., 119.

When a passenger is wrongfully put off a train, at midnight, in a wintry storm, and in attempting to go to the next station, falls through a cattle guard, and is injured, it is proper to submit to the jury the question whether the conductor in putting him off was wanton, reckless and oppressive, and therefore the proper subject of exemplary damages: Evans *v.* St. Louis etc. Railroad Co., 11 Mo. App. R., 473.

It is a principle too well settled to require further elucidation, that a person who, by mistake, gets on a passenger train other than the one which he intended to take, is, nevertheless, a passenger upon the train he is on, and the relation of passenger and carrier exists between him and the company: R. R. Co. *v.* Powell, 40 Ind., 37; Baker *v.* R. R. Co., 24 N. Y., 599.

Chief Justice Mercur, in delivering the opinion of the Court in Vankirk *v.* Pennsylvania Railroad, 76 Penn'a. R., 66, says: "The conductor having ignored the plaintiff's right to ride on it (the ticket), the most he was justified in doing was to require a payment of the fare. This the plaintiff proposed to show he offered to do, but the conductor required more. While a railroad company should be protected in the enforcement of all its reasonable rules, yet fully equal care must be taken to protect the rights of passengers from encroachment. The plaintiff was entitled to ride upon the payment of his fare only. It was in clear violation of the law to require more of him. The defendants being in fault themselves, cannot enforce the right against the plaintiff, which they seek to invoke:" 1 Redfield on Railways, 105, p. 13;

Jenning v. Great Western Railway Co., 12 Jur. N. S., 321; cited by the Court.

It was a question for the jury to say, whether the place at which plaintiff was ejected, was proper and safe. It should not be left to the conductor to put plaintiff off "when he saw fit," but was it safe and prudent to eject plaintiff where he did?

To ascertain the nature and character of the injury, pains, suffering, etc., statements of patient to his attending physician are allowable: Lichtenwaller v. Laubach, 105 Penn. R., p. 366.

When it is alleged that an injury arose from negligence, the question of the proximate cause is to be decided by the jury: Hoag and Seger v. L. S. & M. S. R. R. Co., 4 Norris, 293; Lehigh Valley R. R. Co. v. McKeen, 9 Norris, p. 123; Canal and R. R. Co. v. Lacy, 8 Norris, p. 458; Drake v. Keely, 12 Norris, page 492.

The rule for determining what is proximate cause is that the injury must be the natural and probable consequence of the negligence, and that it might and ought to have been foreseen under the circumstances, held that the proximity of the cause was for the jury: Penn. R. R. Co. v. Hope, 30 P. F. S., 373; Brown and Wife v. Chicago, Milwaukee & St. Louis R'y Co., 3 A. and E. R'y Cases, 444; same case in 5 Wis., 532.

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

On the 25th of November, 1883, the plaintiff purchased a ticket at defendant's station in Erie, good only for thirty days, for one continuous passage each way, from Erie to Cleveland and return. The next morning, between one and two o'clock, when he was about to take the Limited Express train to return to Erie, an employé of the defendant directed him to the day coach; he stepped in, sat down, and quickly curled up and went to sleep. After the train had started he was awakened by the conductor's call for tickets, and instantly took from his pocket the ticket and a roll of money. The conductor reached for the ticket, immediately said, "My orders are to put you off;" grabbed the bell cord, pushed the ticket back, and said, "Your ticket is no good." Then the plaintiff vainly endeavored to show the conductor that he was mistaken, offered money in payment of the fare, which was refused, and begged not to be put off at that place, but to be carried to the next station; the conductor answered, "My orders are to put you off, and off you must get. I obey orders if I break owners; come." Thereupon the plaintiff followed the conductor out of the car, and on reaching the ground, the conductor pointed to a light and said, "That will take you to the

depot." The plaintiff started towards that light, soon saw it was on a locomotive, which ran by him. He then tried to get off the tracks; came against what he supposed was a freight train, which he believed was just in motion; turned to pass round the train, and in doing so passed another train back of it; then believed it was safer to go northward, and as he started he noticed a light to his left, a train of cars backing up, and a single car moving; about same time another engine passed him; and when he had crossed some tracks he was struck in the rear and fell unconscious.

The condition on the face of the ticket, that it was good only for thirty days, was the only one of which the plaintiff had knowledge. He believed it was good on every train, had used that kind of tickets on the defendant's road for five or six years, never knew there was any discrimination in its use between trains, and had travelled on the Limited Express from Cleveland to Erie on such ticket, in March or April preceding the date of the injury. When he purchased this ticket and attempted to use it, he did not know there was any difference as to right to use it, between the Limited Express and other trains. Neither ticket agent nor any body else informed him that it was not good on the Limited Express.

Among the facts in this case the foregoing are testified by the plaintiff; and however much in some particulars his testimony may conflict with opposing testimony, and however strange it may appear that the plaintiff knew nothing of the regulations respecting the Limited Express trains, his credibility and the truth of his statements were for determination by the jury. All facts which the jury were warranted in finding must be kept in view in considering the alleged errors in the rulings of the learned judge of the Common Pleas. If believed, the testimony of the plaintiff shows that he entered the day coach of the Limited Express, in good faith, by direction and apparent assent of the defendant's employés, without notice or actual knowledge that his ticket was not good on that train, until so informed by the conductor, and that he was put off the train in the midst of railway tracks—on which were moving, and standing, cars and locomotives—soon as the conductor could stop, after seeing the ticket.

The plaintiff's ticket was evidence of the payment of his fare, and of his right to be carried according to its terms. It did not express the whole contract. What it does not set forth may be ascertained from the reasonable rules and regulations of the defendant; and the holder of the ticket is bound to inform himself of such regulations respecting the conduct of trains and the rights of passengers: Dietrich *v.* Penn. R. R. Co., 71 Pa. St., 432. The jury were instructed that the rules

[Lake Shore & Mich. Southern R'y Co. v. Rosenzweig.]

adopted by the defendant limiting the passengers on the Limited Express to such as purchased special tickets, were reasonable; that it was the plaintiff's duty to ascertain whether his ticket entitled him to a passage on that train before going upon it; and if he went on without a proper ticket the company had a right to eject him, at a safe place, using no more force than necessary. This was substantially repeated in response to the defendant's first, second and seventh points, with addition that it was not incumbent on the defendant to bring home to the plaintiff a knowledge of its rules and regulations. But the Court refused to charge that the law presumes that the plaintiff did know the regulations, and therefore the conductor, if he saw fit, had the right to eject the plaintiff at an improper and unsafe place. Whether there is a legal presumption of such knowledge, is the chief question raised by the assignments of error.

At the outset, the defendant supports the proposition that the law presumes that the plaintiff knew of the regulations, by a most specious and ingenious argument. It is clear that an irrebuttable presumption is meant. The result of affirmance of the proposition is indicated in the brief thus: "The law made it the duty of the plaintiff to ascertain, before taking a seat in the car, whether his ticket entitled him to ride on that particular train. . . . . . But whether as a matter of fact he knew this, cuts no figure in this case—in legal contemplation he did know it. The law made it his duty to know it, and being a duty which the law imposed, there is a conclusive legal presumption that he did know it." The only case cited in support of such doctrine is Horan v. Ellis, 41 Pa. St., 470, where the rule was recognized, that a breach of the laws of the state is not to be presumed against any one, and the presumption is the contrary until proof overcomes it. That case gives no sanction to the proposition claimed. And the proposition is at variance with the decision in Railroad Co. v. Greenwood, 79 Pa. St., 373. There, a rule was adopted and published that after February 1st, 1873, passengers would not be carried on freight trains, except way freight, and not on way freight trains unless they had tickets. Mrs. Greenwood got on the train without a ticket, offered to pay the fare to the conductor, he refused to receive it, and put her off about a mile from a station. She had been accustomed to ride on that train and to pay her fare to the conductor. She had no actual knowledge of the rule. *Held*, that the rule was reasonable; but the plaintiff having rode in the car before and after the making of the rule, without a ticket and without objection, the company should not turn her out at a distance from the station without proof of express notice or actual

knowledge of the rule forbidding any one to enter the car without a ticket. Under the circumstances, putting up notice at the station house was not sufficient. The question of legal presumption of knowledge by the plaintiff of the rule was not raised, and probably was not then conceived.

"Ignorance of the law, which every one is bound to know, excuseth no one." Every person in a country must be conclusively presumed to know its laws sufficiently to be able to regulate his conduct by them, for this is indispensably necessary in order to prevent greater evils. Knowledge of the laws of the state is in all cases presumed, though in no case it perfectly exists, and in multitudes of cases does not exist at all in the concrete. To a presumption of law probability is not necessary; but probability is necessary to a presumption of fact: Wharton's Evi., § 1237. But this legal presumption of knowledge has never been extended to the by-laws and regulations of private corporations. No necessity has been shown for judicial enunciation that there is a legal presumption, or a fiction of law, that a person about to become a passenger, or who has become a passenger on a railway, knows the rules and regulations of the railway company.

A contract was made between the parties when the plaintiff purchased the ticket. Although he neglected to inform himself of all its terms, he was bound by them, unless waived by the defendant. He cannot set up ignorance of them in order to establish rights not therein stipulated and implied. If he could, the defendant had no right at all to eject him from the train. Hence, in a proper sense, he was bound to ascertain and know the regulations of the defendant entering into the contract, and he had no greater rights thereunder than if he had acquired actual knowledge of its terms. As his contract gave him no right to ride on the Limited Express, the company could lawfully eject him. But under the facts which the jury were warranted in finding, the defendant was bound to treat the plaintiff as a passenger who, by mistake, had got on a train not included in the contract. He was entitled to the rights and privileges of a passenger, except as to Limited Express trains. He promptly exhibited his ticket, the evidence of his contract, to the conductor. As a passenger he was rightfully at the station waiting for a train to take him to the place named in the ticket, and entered the car designated to him by an official as the coach for passengers to Erie. There was neither gate, nor closed door, nor employé to warn him that his ticket was not good on that train.

The plaintiff was at the station, a passenger. His entering the car was not like the case of a man entering the dwelling house of another unbidden. One is a public conveyance, the

other is private and the occupant's home. A passenger who enters a car by mistake is not a trespasser who may be sued as such when he commits no actual injury—he has rights other than those of a trespasser. He may so conduct himself as to become a trespasser after being informed of his mistake. The defendant is a carrier, and its cars are for the accommodation of travellers. It owes a duty to every passenger who, in good faith, purchases a ticket and enters any of its conveyances. If the conveyance is not going in the direction the passenger wants to go, or is one which by the contract the passenger has no right to take, its duty is to inform the passenger and put him off at a proper place. This principle was recognized in Baltimore & Ohio Railroad Co. *v.* Schwindling, 101 Pa. St., 258. In that case the plaintiff was a child, went on the platform of the station, and was injured; but was not there as a passenger, and had no business of any kind with the defendant, or any of its agents or employés. The defendant was not liable because it owed no duty to the plaintiff. In the opinion it is remarked as conceded, that when a person goes on the platform at a railway station as a passenger, or on business connected with the company, that the company owes him a duty, and if he be injured by the negligent act of the company, he may recover damages.

There is no evidence of collusion or conspiracy between the plaintiff and any of the defendant's servants to the end that he might wrongfully ride on the Limited Express. As regards the plaintiff, the acts of the persons in charge of the train were the acts of the defendant. As respects his rights, it is immaterial whether the servants of the defendant violated its rules by omitting to lock the doors of the car, or to give him notice that he had no right to enter and take a seat—the doors were not locked and the plaintiff was not notified, and it was submitted to the jury to find whether he entered with consent or acquiescence of the employés of the defendant. A passenger who has an open way to an open car, going to the place to which he bought and holds a ticket, without knowledge that the ticket is not good on such car, is not to be treated as a wrongdoer, endeavoring to ride without payment of fare, or to ride on a car which he knows his ticket gives him no right to enter. If the plaintiff knew that his ticket was not good on that car, and that he had no right to enter without a special ticket, he was a trespasser; otherwise, he was not; and the determination of this was fairly submitted to the jury.

For the reasons stated, the third, fourth, fifth, seventh and eighth specifications of error are not sustained. Nor need much be added with reference to the first specification. The plaintiff's first point was not affirmed as an entirety; but

instead, the Court gave full instruction on the matters sugges-
ted in the point. What the Court said in the answer was the
instruction, and was free of error. That instruction did not
submit whether the defendant considered the place dangerous
when the plaintiff was put off, but did submit whether he was
ejected at a dangerous place. If it be true that the plaintiff
was ejected a little west of the bridge, the conductor pointing
to a light, remarking that would take him to the depot, it is
by no means singular that the plaintiff did not see the bridge,
or that the jury found that amid the numerous railway tracks
and moving cars and locomotives, in the night time, it was a
dangerous place for a stranger. And if he was ejected east of
the bridge, there is testimony that it was amidst railway
tracks. moving trains and locomotives, and of the efforts of the
plaintiff to reach a place of safety.

All the defendant's points from the ninth to the seventeenth,
except the sixteenth, both inclusive, were affirmed. These
need not be repeated. The jury in that way were fully
instructed respecting the requisite care and duty of the plain-
tiff after he was ejected, and that any negligence on his part
in looking out for his safety would defeat his claim for damages.
They are referred to as aiding to understand the instructions
of which complaint is made. For instance, the fourteenth
point sharply defines the duty of the plaintiff with respect
to the safe ways at the bridge, and instructed the jury that if he
neglected his duty he could not recover. But in the sixteenth
point the Court is asked to determine the fact of neglect, and
direct a verdict for defendant. The fourteenth point was per-
tinent with reference to the testimony. The plaintiff, since he
was hurt, has learned the location of the bridge, and he thinks
he was put off the car east of it; he has no recollection of passing
under it, did not look for it, could have seen it had he looked for
it, did not then know a bridge was there, and there was nothing
to call his attention to a bridge. To have affirmed the defen-
dant's sixteenth point would have been palpable error.

The defendant's eighteenth, nineteenth and twentieth points
were rightly refused, with proper instructions on the subject
suggested. If he was knocked down by a blow in his rear
which rendered him unconscious, it does not follow that be-
cause he cannot tell what struck him, that the jury may not
find the fact that his injury was the direct consequence of a
particular act. It was unnecessary to find whether he was
struck by a locomotive, or a car; but it was essential that the
jury should find that his injuries were the natural and prob-
able consequence of the act of the conductor; such a conse-
quence as, under the surrounding circumstances of the case,
might and should have been foreseen by the conductor as

[Lake Shore & Mich. Southern R'y Co. v. Rosenzweig.]

likely to flow from his act. It is said that these points were intended to squarely present the question of remote and probable cause. If the plaintiff was put off at a safe place, and he wandered to a dangerous one, the cause was remote. So would it be, had he remained in the place of safety and some agency had brought his hurt. Was the place dangerous—not alone because of the railway tracks and switches, but of their use by trains, cars, locomotives, and for the making up of trains? These were the conditions present which made the place dangerous, especially dangerous for a stranger in the night time. While the plaintiff was trying to get out of that place he received the injury. There is as little reason for inference that he was hurt by a sand bag, as there would have been had the blow killed him. It is probable that the jury inferred that one of the things which made the place dangerous, struck him. There is where the defendant put him, and where he was hurt; the cause and effect were closely connected, and by prudent circumspection and ordinary thoughtfulness the conductor could have foreseen that the plaintiff's injury was likely to happen. Under the facts and circumstances which the jury could properly find, had the Court ruled that the defendant was not liable by reason of remoteness of the cause of injury, it would have been equivalent to saying that it was wholly immaterial whether the plaintiff was ejected at a safe, or a dangerous place, for in either case he could not recover.

The questions raised by the numerous alleged errors in the general charge have already been considered, and only two of the specifications, the fifteenth and twenty-second, will be noted. The fifteenth complains of the following sentence: "The plaintiff further claims that the place where he was put off was a dangerous and improper place for putting off a passenger, and that his ejection was a wrongful, wanton and inhuman act on part of the conductor, and wholly unjustified by the circumstances."

The defendant characterizes this as unwarranted, unjust and unfair; that there is no such averment in the declaration, nor was evidence thereof introduced at the trial; and the statement was calculated to poison the mind of the jury. It is true that the phrase "wanton and inhuman" is not in the declaration. But each count avers that, in the night time, the plaintiff urging, asking and insisting that he be carried at least to the nearest station and place of safety, the conductor compelled him to get off at a dangerous place, "it being upon and in the midst of many railway tracks, switches, trains, cars, engines, locomotives, and where trains of freight were and are made up, and where trains, cars, engines and locomotives pass

and repass, and at a place strange and unknown to the plaintiff." The plaintiff claimed there was testimony tending to prove that averment; and very likely, orally, at the trial, spoke of the act of ejecting him at such a place as wanton and inhuman. But whether he did so qualify the act or not, the Court merely stated the claim, without alleging or asserting anything, or indicating that it was sustained by proof. With equal fairness the claims of each party were stated. If the averment in the declaration be true, was not the act of the conductor inhuman?

The twenty-second specification complains of the following : "It was the duty of the conductor to use discrimination, and not to treat as a mere trespasser and tramp and wrongdoer, a passenger who was merely guilty at most of an error of judgment or neglect to make inquiries he ought legally to have made."

That proposition is sound. If the jury found that the plaintiff was a passenger merely guilty of error of judgment and neglect to make the inquiries he ought to have made, then he was not to be treated as a trespasser and wrongdoer. In exercising discrimination the conductor would note his conduct, whether he had or had not a ticket, or whether he was able and willing immediately to pay the fare. If he acted as a trespasser and wrongdoer, and not as a passenger who had made a mistake, he could not complain of the treatment he thus invited. With the context, it is plain that the jury could not have understood that sentence as an instruction that the plaintiff was a passenger only guilty of error of judgment and neglect. In the sentence immediately preceding, the Court charged that if the plaintiff, knowing that he was not entitled to ride on that train, and in wilful violation of the rules of the company entered the train, he was a mere trespasser. And the jury were repeatedly told they were to determine every question of fact.

There was no error in the refusal of defendant's fifth point. The second count alleges no contract other than is implied by accepting the plaintiff as a passenger, without his having a ticket, and charges that his tender of the fare was refused and that he was wrongfully ejected at a dangerous place. His right to recover, under the pleadings, did not depend on showing a right to ride on the limited express. He was bound to show, and did show, that he was a passenger, and as such, if by the omission of the defendant's employés to warn him that he could not rightfully enter that train, without a special ticket, he entered it by mistake, he was entitled to the treatment due to a passenger, though not entitled to ride on that train. It is clear that the cause was tried on its merits, and if it be that the declaration does not set forth the case with accuracy, it is

amendable. A mere technical defect that did not and could not mislead, is no ground for reversal.

The twenty-fourth specification is not sustained for reasons stated in Lichtenwallner v. Laubach, 105 Pa. St., 366.

Were it conceded that it was error to exclude the question made the subject of the twenty-fifth specification, there is now no cause for complaint, for, at a later stage in the trial, the defendant recalled the witness, who corrected the alleged mistake, and was examined and testified fully on the very point to which the overruled question was directed.

Manifestly, there is no error in the rulings made the subjects of the last two specifications.

The remaining specification which will be remarked, alleges error in the qualified affirmance of the plaintiff's second point; "That if the jury find from the evidence, that the servants of the defendant ejected the plaintiff from their cars not at a regular station, nor at a dwelling house, as required by the rules of the company, but at a place known to the defendant to be dangerous and unsafe, then and in that case, if they find for the plaintiff, their verdict should be punitive damages."

The jury were instructed that under such circumstances they could find punitive damages or only compensatory damages. In considering other points, reference has been made to the averments and evidence touching the time, place and circumstances of the plaintiff's ejection. It is uncontroverted that the rules referred to in the point existed, and respecting them the defendant well says, "But the rules of the company were not established for the benefit of trespassers; they were established for the protection of the public and for the benefit of those with whom they stand in contractual relation." It is unnecessary now to consider whether the company may put off a trespasser, to whom it owes no duty, at a place where there is probability that he will be killed.

Very little stress need be put on the existence of said rules, reasonable as they are, directing only such treatment as ought to be given to passengers, were no such rules expressly adopted. That they are for guidance of the employés in the putting off passengers who have no right to ride on the trains which they have entered, is obvious. If they had right on the train there would be no occasion to put them off. But in determining whether the conductor acted in reckless disregard of the plaintiff's rights, the jury ought to have kept in view the fact that he violated an express rule calculated to promote the safety of passengers and those having contractual relation with the defendant. This conductor committed no battery. He made no threats. He acted quickly. A glance at the ticket, a pull of the bell rope, the stopping of the train, a deaf ear to

the plaintiff's entreaties to be carried to a place of safety, a few significant words, and the plaintiff followed him to the ground there to be pointed to a light toward the depot, but not to a bridge or any safe way out of his peril. If there was no wilful misconduct by the conductor, how can it be said that he was not recklessly indifferent to the consequences likely to befall the plaintiff? If the suit were against him there could be little question that the jury would be permitted to give exemplary damages.

The liability of railway and other corporations to exemplary damages for gross negligence is well settled. The general rule in cases for negligence is that only compensatory damages can be given. Juries are not at liberty to go farther than compensation, unless the injury was done wilfully or was the result of that reckless indifference to the rights of others which is equivalent to a violation of them. There must be wilful misconduct, or that entire want of care which would raise a presumption of conscious indifference to consequences: Milwaukee & St. P. R'y Co. *v.* Armes, 91 U. S. R., 489. The corporation is liable for exemplary damages for the act of its servant, done within the scope of his authority, under circumstances which would give such right to the plaintiff as against the servant were the suit against him instead of the corporation.

Judgment affirmed.