Loeffler *v.* Western Electric Co., Appellant.

Argued September 27, 1932.

Before TREXLER,

P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ. 

*Clarence G. Myers,* and with him *Duane, Morris & Heckscher,* for appellant.

*Arthur B. Eaton,* for appellee.

OPINION BY STADTFELD, J., December 16, 1932:

This is a workmen's compensation case. The referee and the board allowed compensation. The lower court, LAMBERTON, J., overruled exceptions, dismissing the appeal of the defendant and entered judgment on the award. From that judgment this appeal is taken.

Lawrence C. Loeffler was employed by Western Electric Company in the City of Philadelphia. On April 9, 1930, Lawrence, then nineteen and one-half years old, in the course of his employment ran a splinter of brass into his hand causing what then appeared a trivial injury. On April 18, 1930, Lawrence died, and his father, Christian J. Loeffler, and his mother, Freda Loeffler, presented a claim for compensation, contending that the death of Lawrence resulted from said accident, and that claimants were dependent on Lawrence at the time of his death.

The referee found, inter alia, in his finding of fact

No. 4 that the accident which decedent sustained, and the resulting infection from said accident, so lowered his resistance that pneumonia developed and thus hastened his death.

The board set aside this finding of fact in the form stated, and from the testimony substituted its own finding therefor as follows:

"(c) That a virulent poison entered the body of the decedent through this wound as the instant, direct, and immediate result of the accident and injury and on Saturday afternoon, April 12, 1930, the decedent was confined to his bed; on Sunday, April 13, 1930, the decedent became delirious and suffered from high temperature, rapid pulse, and pains of the body, localized particularly in the left arm, right shoulder, elbow and wrist; on April 16, 1930, the wound in the palm of the hand was opened showing a deep seated abscess, which was drained; on the 17th of April, 1930, the decedent began to spit blood, and cultures then showed the presence in the blood stream of staphylococcus and pneumococcus, his throat was red, accompanied by depressed breathing, irregular heart, and distension of the abdomen, and on the said day the decedent was removed to the Frankford Hospital where he died on April 18, 1930.

"(d) That on April 18, 1930, an autopsy was performed by Drs. Smith, Miller and Kirby, and the cause of death was found to be bronchial pneumonia with toxemia associated therewith, that being the general agreement of all present.

"(e) That the injury to the hand of the decedent was the proximate, predisposing and superinducing cause of toxaemia, virulent blood stream infection, intense congestion of the liver, spleen and kidneys, bronchial pneumonia, and such other ailments as were admittedly not found or disclosed by the autopsy, all of which contributed directly or indirectly to the death

of the decedent, the injury being followed by a typical local infection which spread rapidly into the blood stream and overwhelmed the patient, resulting in his death.''

The board also found ''4. (a) That prior to April 9, 1930, Lawrence C. Loeffler, was a strong, healthy and robust lad of nineteen.''

As to the findings of fact by the referee and the board, the only question for the court is: Does the record contain legally competent evidence to sustain them? Ford v. Dick, 288 Pa. 140. If the findings are based on any competent evidence or on an inference fairly deducible therefrom, the award must be sustained, though we might differ from the conclusion thus reached. We cannot substitute our judgment for that of the referee or the board, as the compensation act has delegated to them the exclusive function of determining these facts. An appellate court will not review such conclusion: Morris v. Yough Coal and Supply Co., 266 Pa. 216, 219; Todd et ux. v. Lehigh Valley Coal Co., 297 Pa. 302.

The burden was on claimants to prove that the accident was either the sole or the superinducing cause of the ailments complained of. The evidence must be such, as to support a finding that the condition alleged was the natural and probable result of the accident. Davis v. Davis, 80 Pa. Superior Ct. 343. The question whether there is competent evidence to sustain a finding of fact is one of law, and may be reviewed. Vorbnoff v. Mesta Machine Co., 286 Pa. 199.

Dr. Miller testified that he was called in Sunday, April 13, found the deceased in bed; thought he was suffering from a severe grippe; had pains throughout the body and a high temperature and accelerated pulse; that his condition was about the same on Monday morning, but he called again Monday afternoon; he called again Tuesday morning; his condition was worse; his

temperature was a little higher and pulse rate accelerated and his generalized body aches were more or less concentrated in the left arm, right shoulder, elbow and wrist; he had some marks on his abdomen; that his left hand was swollen and he found a beginning abscess on the left hand at the base of the fingers between the second and third fingers, which he dressed; on Wednesday he found some slight lymphangitis which is an infection of the lymphatics in the arm that extended just a few inches above the wrist, and a considerable accumulation of pus superficial in the hand; he incised the entire depth and liberated about two teaspoonsful of pus; on the base of the superficial abscess there was a small hole one-quarter inch in diameter that led to some abscess in deep below the palmar facia; that the following day, Thursday, April 17, he became suspicious of a blood stream infection and called Dr. Lynch in consultation; Dr. Lynch's diagnosis was a severe influenza with congestion of the lung, possibly leading to pneumonia; the patient was very toxic from his disease, spit up a quantity of blood, and from time to time was delirious; on Friday morning he was taken to the Frankford Hospital and died Friday afternoon, April 18, 1930, at about four thirty o'clock.

On cross-examination, Dr. Miller further testified: "That on Sunday his lungs were fairly clear. They were no more than anyone with a high temperature. He was sore to the touch pretty well all over his body and had some slight inflammation of the throat and this swelling of the palm of the left hand. His temperature was 104. ...... Q. Do you know what was the cause of the death? A. Yes. Q. Of your own knowledge? A. Only that I can say I was present at the autopsy and the findings indicated there was a bronchial pneumonia which was the immediate cause of death; also the infection of the blood stream caused by the staphylococcus and pneumococcus."

Dr. Lynch testified: "Q. Limit yourself to this particular case. From your knowledge of the entire case, is there any causal connection between the alleged accident that he sustained which resulted in an infection, and the ultimate death? A. Well, that is a matter of opinion. Q. That is what I am asking you for? A. I should think the infection lowered the man's vitality so that he did develop pneumonia. Q. Do I understand you mean by that the infection that he sustained in the hand and arm was a contributing factor to the pneumonia which ultimately caused his death? A. I would think so. Q. Is that your professional opinion? A. Yes."

On cross-examination, Dr. Lynch testified: "Q. To what extent would this infection—what is your understanding of the infection involved in this case? A. The staphylococcus and pneumococcus infection. Q. How serious an infection have you in mind in making your diagnosis and drawing your conclusion? A. Very serious, serious enough to cause death. Q. The infection of the hand? A. Well, a serious infection. Infection never causes death immediately, may start with a little pin prick and be mild at the beginning. Q. Would you say a slight cut could lower a man's vitality to what extent? A. Enough to take in infection and finally result in death. Q. And to get a condition of pneumonia? A. Yes."

Dr. Kirby, called as an expert by defendant, and who examined the body of decedent at the autopsy, testified: "The general post mortem of the lungs were congested but right lung was the seat of a bronchial pneumonia at the base; sections sank immediately; long incisions through the lung revealed many points of tubercles mostly quiescent but seemed apparently in the state of reacting; there were, however, no signs of miliary tuberculosis and no evidence of infarcs in the lung. The heart was a little stiff from the toxemia,

but no evidence of any other change, and the valves are nice and clean as possible; to have them. The liver was somewhat enlarged, the result of cloudy swelling, which means the intense congestion; the spleen was likewise enlarged for the same reason, and both kidneys enlarged, and no evidence of septic infarcs to be found anywhere. Cause of death bronchial pneumonia with toxemia associated therewith.''

The rule laid down in Fink v. Sheldon Axle and Spring Co., 270 Pa. 476, applies only where expert testimony must be solely relied on to show the connection, and does not apply where the condition is immediately and directly, or naturally and probably, the result of the accident. Grobuskie v. Shipman Koal Co., 80 Pa. Superior Ct. 349; Davis v. Davis, supra. The workmen's compensation board in the opinion filed, based its decision on this latter line of decisions, saying: ''expert testimony is unnecessary, the direct relation between the injury and the causes of death being sufficiently proven otherwise.'' As stated by our brother TREXLER in Flour v. P. R. R., 99 Pa. Superior Ct. 170, p. 174, ''There seems to be an obvious relation between the injury and the infection.'' The unbroken sequence of events would lead one to believe that there was a causal connection between the happening of the accident and the death of the employee.

We believe that the facts of the case, in connection with the medical testimony, are sufficient to sustain the award. The assignments of error are overruled and the judgment of the lower court affirmed.