### Kelce v. Swift & Company, Appellant et al.

Argued October 24, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Edward J. Thompson*, for appellant.

*Theodore C. Jackson*, for appellee.

Opinion by Stadtfeld, J., January 4, 1935:

This is an appeal from the judgment of the Court of Common Pleas of Clearfield County, sustaining the Workmen's Compensation Board in affirming the referee's award of compensation.

On November 18, 1930, Eli Kelce, the decedent, was injured while working for Swift and Company in that he suffered a sprain in his left chest area when lifting a heavy quarter of beef.

The testimony showed that prior to the accident he had been in good condition; that in the earlier part of his life he had been a miner, later a drayman for over ten years, and then a truck driver for Swift and Company; that he had never lost any time on account of sickness, except when he had been ill with the flu about 1918.

On the day of the accident he came home about five thirty or six thirty o'clock P. M.; that evening, after

having gone out to attend a fireman's supper, he was brought home between ten and eleven o'clock by his brother and son-in-law, suffering excruciating pain, unable to get his breath.

Dr. W. R. Heaton, the family physician, was called and gave him a hypodermic injection and some pills. The doctor testified that he found him suffering a very severe pain in his left side and left chest area; that he made three visits that night, one just before midnight and the other two after, and administered sedatives to relieve the pain; that the decedent had always been a sturdy, strong, rugged young man; that he came to see him frequently at the doctor's office after he had gone back to work a few days after the accident; that he claimed to be working under a great deal of stress and pain and the doctor told him that he should not work. He worked regularly until after Christmas of 1930 and then worked every other week on a stagger system of employment until April 25, 1931, when he was laid off on account of business conditions. He was back to see the doctor two or three times a week until after New Year's, and then frequently once or twice a week until he went to the hospital. He never regained his health, going down in weight from 135 or 145 pounds to 108 pounds until he died on September 14, 1932, aged about 45.

Dr. Heaton further testified that he never felt personally that there was any malignancy present, and that the State Laboratory examination of the specimen he saw did not indicate anything like that, and that from any investigation, from the post mortem findings, and the report of the State Laboratory, it couldn't have been; that professionally, from his own standpoint, there was no malignancy; that when he examined the left lung, the one affected, it was about one-fourth its normal size and practically collapsed; that at no time from the time of the injury, until the

time of his death, did he discover any independent condition arising except the continuation of the injury itself, and the pathology that was caused as a result of the lifting continued to exist and to complicate itself until the date of his death, resulting in a condition of traumatic pleuritis; that the injury was the first primary exciting cause; he had a weakened condition, a displaced lung and displaced heart, complicating his general physical condition, so that it affected his heart; he had myocardial failure; that in the examination made after death he found absolutely no evidences of growths.

It appeared that Dr. Heaton had on December 10, 1930 given a final report indicating the patient discharged as cured on November 21, 1930. He explained in his testimony that he believed his patient had relatively fully recovered for the reason that he was working, and that at that time he didn't believe any serious complication was going to arise, and that he was in process of recovery; that it was not possible at that time to properly diagnose his condition; that he was still complaining of the pain, as very frequently sprain conditions linger and create neuralgias and pains. The decedent minimized his suffering and his pain and condition at first and declined to cease work.

Dr. J. N. Cornely, called on behalf of claimant, testified that he first called to see Mr. Kelce on April 11, 1932, when he complained of severe pain in the left chest; that he had previously been given relief by tappings by Dr. Luxemberg, and that he, Dr. Cornely, continued the same treatment at intervals of ten days or two weeks; that he saw him at intervals of ten days from April until his death; that he took part in the physical examination of his body after death; that after the chest wall was opened the left lung was completely collapsed against the mediastinum or midarea of the chest; there was approximately a pint of reddish

brown fluid in this cavity; the pleura was roughened over its entire surface and covered with a plastic exudate that will occur accompanying any inflammation of the pleural cavity or of the pleura; that he explored the lung with his hands and felt no nodules; by touch he found no ulcerated area and by observation could see no ulcerated area in the lung or the pleura wall; he took from the lung a portion of the tissue, and a portion of the pleura and a portion of a rib and pleura; that these tissues were later that same day sent by the laboratory at the hospital to the State Laboratories for pathological examination. The report from the State Laboratories in Philadelphia as to the lung tissues showed, inter alia, chronic interstitial pneumonitis but no lymph node; the cartilaginous and bone tissue showed congestion and degeneration of bone marrow and chronic osteomyelitis. On cross-examination he testified that in his investigation of the mediastinum in the autopsy, he found no evidence of cancer; he stated that he sent samples from that portion of the thorax to the State Laboratory for examination, but got no report back on that tissue, claiming that it wasn't present in the specimens sent; that the fluid found was secondary to the inflammation; that the continuous loss of weight and the presence of the brownish red fluid were suggestive of a cancerous condition but there were no marked ulcerated areas at the point of the aspirating needles, but there were papules present at some of these points which might suggest that the tissue was devitalized; that the lung collapse could have been caused by an injury such as decedent had sustained.

Dr. E. R. Jones, called on behalf of claimant, testified that he had called to see the decedent at the latter's residence in December, 1931, but made no physical examination at the time; that when the patient was sent to the hospital, he made such examina-

tion and found a complete dullness of the left lung, indicating either a complete consolidation of the lung or that there was a fluid between the lung and the chest wall. The x-ray which he ordered showed fluid in the pleural cavity on the left side, and the doctor had Dr. Cornely aspirate him and took a pint or more of serum or fluid of the pleural cavity which was of a dark reddish color, indicating that it was mixed with blood; that he thought at the time it was a cancer of the pleural cavity, but after the autopsy was made, he concluded it couldn't be that, and that the fluid must have come from some blood vessel through the pleural cavity or from the lung; that the x-ray would not indicate exactly what caused the fluid to be in there; that in his professional opinion, in the absence of malignancy, the liquid found in the cavity would be caused either by pleurisy or by the rupture of a blood vessel in the lung; that a rupture of a blood vessel could very easily be caused by cancer.

On behalf of defendant there was countervailing testimony of Dr. Luxemberg who had attended decedent several days in April, 1931, at the Philipsburg State Hospital, and later on saw him with Dr. Jones in January, 1932, and found evidence of consolidation of the entire left chest; that they tapped his chest primarily and extracted about a quart of bloody fluid. His diagnosis was, he believed, he had a malignancy of the pleura; he could not co-relate this to the accident of November 18, 1930. On cross-examination he stated that if there were no evidence of any growth anywhere in the body, any malignancy, he would take back his clinical diagnosis; that a physical examination of the pleural cavity after death should reveal evidence that endothelioma or growth was there, and that if it didn't reveal such evidence he would have to say that his impression was incor-

rect; that in cases of such long standing there should be distinct pathology somewhere.

Dr. John K. Henderson was called and testified he had been present at all the hearings and listened to the entire testimony but that he had never examined Mr. Kelce, and had taken no part in the post mortem examination; that in his opinion decedent died of cancer and that there was no casual connection between the sprain in November of 1930 and the death of the patient.

As stated in appellant's brief this case involves the question of whether or not Eli Kelce, the decedent, met his death on September 14, 1932, as a result of a sprain he is alleged to have sustained by lifting on November 18, 1930; or, as the result of malignancy or cancer, unrelated to the accident mentioned.

As the cause of death, the two attending physicians gave the term hydrohemothorax, which means water and blood in a thoracic cavity, this condition having been directly the result of the accident.

The referee found as a fact that the cause of death was hydrohemothorax, secondary to the accidental injury suffered by the decedent while in the employ of the defendant company; that as a conclusion of law claimant's husband died as a result of an injury by accident while in the course of his employment for the defendant company and made an award in favor of claimant. This award was affirmed by the Workmen's Compensation Board, and subsequently judgment entered thereon by the lower court.

A careful examination of the entire record convinces us that there is sufficient legally competent testimony to support the award, and we have no authority to interfere with it: Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 133 A. 256; Hiles v. Hecla Coal and Coke Co., 296 Pa. 34, 145 A. 603; Loeffler v. Western Electric Co., 107 Pa. Superior Ct. 326, 163 A. 322.

The assignments of error are overruled and the judgment of the lower court affirmed.